Our first case this morning is Heien v. North Carolina. Mr. Fisher. Mr. Chief Justice, and may it please the Court, in a country dedicated to the rule of law, governmental officers should be presumed to know the law at least as well as the citizens are. That being so, when questions about individualized suspicion arise under the Fourth Amendment, they should be addressed against the backdrop of the correct interpretation of the law, not simply any plausible reading an officer might have. So suppose that this State, North Carolina, did have a good-faith exception to the exclusionary rule. What would you be arguing today? We would still be arguing, if that were the case, that not only the Fourth Amendment was violated, but that the good-faith exception didn't apply. But you wouldn't have to reach that question in this case. And I would concede to you, Justice Kennedy, that would be a debatable argument under this case for good-faith jurisprudence. Why would it be any more debatable than the argument you're making here? I more or less anticipated your answer. I think that has to be your answer. I think you have to tell us, even if the good-faith exclusionary rule applies, a mistake of law just doesn't count. Well, that's not exactly what this Court's jurisprudence holds, of course. In Crowell v. Davis, the Court has held that reasonableness of mistakes of law can be taken into account at the remedy stage. And I think that would be. But then the question is, why isn't that a problem for you when you say there cannot be a reasonable mistake of law? We know there can be. Well, there's a difference, Justice Kennedy, between rights and remedies in the Court's jurisprudence. When you ask the question about what is reasonable as to whether or not the Fourth Amendment was violated, both in its Fourth Amendment jurisprudence in criminal cases and in qualified immunity cases, you do that assessment against the correct interpretation of the law. Now, when we're talking about whether as a categorical matter, as a jurisprudential matter, we can have this dichotomy known as a reasonable mistake of law, a difficult and interesting question. But it seems to me that you have to make the same argument here or in the case where they have a good-faith exception, as you're making here, and that you have a problem with Davis and Krull, and if you don't have a — if you have a problem with Davis and Krull, then that undermines your categorical argument. No, I really don't think so, Justice Kennedy. I think the best exposition of this problem in the Court's jurisprudence is actually in the Anderson v. Creighton case, the qualified immunity case, where the Court wrestled with this notion that how can something be reasonable in one sense and unreasonable in another. And the answer the Court gave is that when we ask whether the Fourth Amendment was violated, we do not take mistakes of law into account. But the reasonableness of a mistake of law can go to the remedy question. This is the premise from which Leon, Krull, and Davis all derive, which is that there was a Fourth Amendment. Ginsburg. Mr. Fisher, I have a preliminary question. Even if you write about mistake of law, isn't it a moot question in this case? Because as I understand it, the traffic stop ended with a warning citation. So the traffic stop is over. And at that point, the police officer asks if he can inspect the car. And the answer is yes. Why isn't the consent to the search the end of this case? Because it would be the fruit of the poisonous tree, Justice Ginsburg, if the stop was illegal. There would have never been an opportunity to ask for consent. And I think that's why the State and the Solicitor General haven't made any argument that the consent wipes away the Fourth Amendment question here. Well, suppose the officer had said, all right, I'm giving you a warning, you're free to leave now. But by the way, may I search your car? I think that's more or less what the officer did say here, Justice Alito. And you would say then, even in that situation, that that would be the fruit of the poisonous tree? Yes, because the stop wouldn't have taken place. The Court's cases, Pruse and all the rest, say that a traffic stop is a seizure. And so upon pulling Mr. Hine over, the officer needed to have reasonable suspicion to do so. And the only argument for reasonable suspicion is the mistake of North Carolina law as to the break light in this case. I understood you to say earlier that you don't take distinguishing the exclusionary rule in qualified immunity. You don't take reasonableness into account when it comes to a mistake of law. What I — I'm sorry, Mr. Chief Justice. What I think I said is that you don't take the reasonableness of mistake of law into account when you ask whether the Fourth Amendment was violated. You do sometimes. I'm sorry. Go ahead. Forgive me. You do sometimes when you ask about the remedy, and that's what you did. But the Fourth Amendment itself protects only against unreasonable searches and seizures by its term. I don't understand. It would seem to me that there's a stronger argument for taking the reasonableness of the officer's actions into account when you're talking about a mistake of law, because that's what the Fourth Amendment says, as opposed to remedies in qualified immunity. Mr. Chief Justice, the Court rejected that precise argument in Anderson. That textual argument that the word reasonableness means that the Fourth Amendment incorporates mistakes of law, and because of a deep common-law rule, which is that when we ask — Roberts, if I could just pause, I thought we said exactly that in Herring, though, where we said that even though we're going to look at it in terms of remedy, that was not to say that the reasonableness didn't go to whether there was a substantive violation of the Fourth Amendment. My understanding of Herring would be that would be a mistake-of-fact case, whether or not there was a warrant outstanding for Mr. Herring's arrest would have been a factual question, not necessarily a legal question. In Anderson and Kroll and Leon, in Leon, Mr. Chief Justice, the Court said the officer in that case acted exactly as a reasonable officer could and should have acted. And time and again in the Court's exclusionary rule cases, they've said the officer acted reasonably because at the reasonableness stage you can take into account whether the officer reasonably misunderstood the law. But at the right stage, forgive me. Roberts, as you say, putting aside our discussion of Proust and Herring, why does it make sense to say that you don't take reasonableness into account when the Fourth Amendment only protects against unreasonable searches and seizures? I think for three reasons, Mr. Chief Justice. There's a practical reason, a theoretical reason, and a jurisprudential reason. Now, I'll start with the theory because that's where I was just describing. The deep common law heritage in this country that we have always followed in the best exposition of that is in the Court's Cheek case, is that the criminal law is presumed to be definite and knowable. So in all kinds of settings, whether it be punishing somebody for violating the law or any other actions citizens or the government engages in, we always assume a correct understanding of the law, even if it's later construed by a court in a way that wasn't exactly predictable or predictable. Isn't it strange that you're citing Cheek for that proposition? Didn't the Court hold in Cheek that under the – in that – in the circumstances there, ignorance of the law would be a defense? Because of a special statutory exception that Congress had written, the beginning of Part 2 of Cheek is what I'm relying on, Justice Alito, where there's a paragraph or two that sets out with numerous citations this principle, Justice Holmes described and many others, that the criminal law is presumed to be definite and knowable. And once you take that presumption and put it into the police officer's mind in this other governmental actor who acts on a mistake of law, then there is no reasonable suspicion, because we presume them to have known the law when they acted. Kennedy, Suppose the officer stopped the driver here and said, you know, I've been going to night law school and we don't know about this one light, two light thing. There's an intermediate court of appeals that's hearing the case. It sounds like they're going to say only one light is necessary, but I don't know what the law is. You better get this fixed. Well, I think there's two questions in there. And then he sees the contraband. Pardon me? And then he sees the — in the course of this conversation, he sees the contraband. Well, I think there's two questions embedded in there. One is whether the officer can look to court decisions or other third-party sources to help him do his job. Now, again, that is what the Court has said in the Crowell and Davis cases, that you take into account things like police manuals, court decisions, the rest. The Court has embraced that in its remedy jurisprudence, but in Wren has said that is off limits as to the Fourth Amendment. Now, I think there's also an element of your question asking about what if all of the officer was worried about was the safety on the roadway. That would be a very different case. Again, I'm going to turn the Court to Wren, where the Court said that if there's a stop done for reasons aside from probable cause, then the purpose of that stop, such as the community caretaking function, might kick in. But, of course, the State hasn't made any argument in that respect in this case, because the record is quite clear the officer was performing a criminal investigation. Scalia, Mr. Fisher, we don't review opinions, we review judgments, we review results. What you're complaining about here is the admission of what was discovered in the search of the car, right? Now, what difference does it make whether that was lawfully admitted because it was a constitutional search, or it was lawfully admitted because the remedy of excluding it would not be applied if there was a mistake of law, a reasonable mistake of law? I mean, the constitutional problem is the admission of this evidence, and it seems to me whether it's properly admitted because the Fourth Amendment wasn't violated or whether it's properly admitted because the remedy for that violation is not exclusion of the evidence, you lose either way, don't you? Well, Justice Scalia, nobody has addressed the question of remedy in this case, because nobody needs to address the question of remedy. Well, we need to if we find, as you urge us to find, that it violates the Fourth Amendment, which we would then have to, in order to decide whether this judgment is lawful, we would have to decide whether the remedy of excluding that evidence has to be applied. And, you know, the answer to that is no. With respect, Justice Scalia, I'm not sure the Court needs to do that. Of course, I think the Court can vacate and remand the judgment, just as it does innumerable other times where it finds a problem with the lower court decision and therefore sends it back. Even if this were purely a Federal case, Justice Scalia, I think I'd be saying the same thing, which is nobody has briefed or argued the good-faith exception in this case. So you would do it. Scalia, you have, and you acknowledge that it applies to remedies. No, no, no. Here's what I've acknowledged, Justice Scalia, and I guess this is important. We've acknowledged that the question of whether the mistake was reasonable would be relevant, if at all, at the remedy stage. So what you would do is you'd ask the question, if this were a Federal case where you had to reach the question, you'd ask whether the officer's mistake of law in this case renders suppression inappropriate. Now, I would add that holding that it did render suppression inappropriate would be an extension of the Court's current good-faith jurisprudence, which thus far has held that good-faith doctrine applies only when an officer relies on binding law from a third — from a legislature or a court. So the most you can get from us is a remand. That's right. I mean, but I do think it's just like any other — So letting a North Carolina court decide whether the remedy of exclusion should have been applied. That's right. And I — for example, Justice Scalia, I'm not sure it's any different if I said there's a constitutional violation that I may or may not be entitled to a remedy for under Chapman because the error was harmless or not. Those are the kinds of situations where the Court would always resolve the constitutional question that the lower court addressed and then send it back down for the question of remedy, and that's all I'm asking. I don't know why, following up on what Justice Scalia is saying, he's saying we don't give you a remedy unless we believe that one is warranted under the Fourth Amendment. And since we apply, it doesn't matter what North Carolina applies, good-faith or not. What we apply in terms of determining whether a Federal violation, a constitutional violation, is subject to any type of remedy for you is the good-faith exception. So why do we have to remand? I think that's Justice Scalia's question, and I'm not quite sure you've answered it. The reason to remand it because the lower court hasn't addressed any question of remedy, and so in the first instance, you should send it back to the lower court for a full adversarial briefing subject to waiver and all the rest. Ginsburg-McCarthy North Carolina has a rule, I thought, that if you violate the Fourth Amendment, that's it, we don't have a good-faith exception. That will be our position on remand, Justice Ginsburg. The State may try to persuade the court of something else. Isn't that what the North Carolina law is now? So it would be futile to send it back for them to answer the good-faith exception since they have none. It wouldn't be futile, Justice Ginsburg. I think the analogy that I gave earlier about Chapman is more or less on point. The Court has held that if the Constitution is violated, that the defendant in a criminal case doesn't get a remedy unless he satisfies that test. Now, all the time in criminal cases, you would just decide the constitutional issue and then send it back for remedy analysis if the lower court hadn't addressed it. Scalia. That's because they would be applying Federal law. They would be answering the question that you want us to leave unanswered, namely, whether the Constitution requires that this evidence be stricken from the case. But if indeed they're not going to ask that question when we send it back, it seems to me we have to answer that question here before we are able to reverse or affirm the North Carolina court. It's a Federal question. They are not going to get to that, but you're asking us to invalidate this conviction on the basis of Federal law. And it seems to me we cannot do that unless there has even — if there has been a violation of the Fourth Amendment, the remedy must be exclusion of the evidence. That's a Federal question. I think we're going to have to decide it. If we send it back to North Carolina, they're not going to decide it, are they? No, I don't believe they would or should. But I — but just if a State had adopted a rule saying, we're going to have a more favorable jurisprudence of constitutional error and give automatic new trials, the Court wouldn't be prohibited from deciding a constitutional issue and sending it back down to the State. In the retroactivity sphere, Danforth v. Minnesota is another case where the Court has said that States can choose for themselves to have more favorable remedies, and the Court simply deals with the Federal question. Mr. Fisher? Alito, there's no question that if North Carolina applied a State constitutional analog to the Fourth Amendment, they could have a more extensive remedy than is recognized under our Fourth Amendment cases. But your argument is they can adopt a State law rule for Fourth Amendment violations that is more protective of defendants than Federal case law provides. That would be your argument, right? I don't need to make that argument. I think that would be an interesting question, and I think the State may be able to do that. But what the Carter decision in North Carolina says is that violations of the State constitution cannot be overlooked on good faith doctrine. Well, was this decision based on the State constitution? No, it was based on the Federal constitution. So we would send it back down, and we've preserved an argument that under State law, the violation of the Fourth Amendment also violates the North Carolina constitution. But you're asking us to reverse it on the basis of Federal law, and you're asking us to send it back to a State court which is not going to inquire any further into Federal law, even though Federal law, arguably, you will concede, says that even if there is a Fourth Amendment violation, if there is a good faith, if there is a reasonable belief that the law was violated, the remedy of exclusion will not be imposed. That's what the Constitution requires. And you're asking us to say, oh, no, there's been a violation of the Constitution, and we're going to reverse this judgment, even though we haven't inquired into whether the remedy that you want is required. It seems to me we don't see how we can do that. Well, I don't want to keep saying the same thing. I'll try and say it one more time. I think it's fully customary for this Court to have a case from State courts where a State court issues a ruling on Federal law. There may be many other issues in the case, Federal, State, whatever, but if the question of Federal law the State court decided is incorrect, this Court can reverse that judgment, say you got Federal law wrong, and we're going to send it back down. But it chooses to decide based on only half of the Federal law, or three-quarters of the Federal law. Can North Carolina more or less set us up this way? Well, I think This is Well, there is a Federalism element Justice Scalia's concern Forgive me Which is a follow-on to Justice Scalia's question. Yeah. They didn't get Federal law wrong. Their opinion got Federal law wrong, but their judgment did not get Federal law wrong if indeed a good-faith mistake of law does not require the exclusion of the evidence from the trial. The judgment did not get Federal law wrong, if that's the case. Well, I think that their analysis got Federal law wrong for the reasons we've described in the second case. Don't review analyses. We review judgments. You're urging that this conviction has to be set aside. That's what we're reviewing, the conviction, not the opinion. Well, Justice Scalia, if you want to decide the good-faith question that has not been you might want to tread carefully. Now, we've given you maybe what I need to do at this point before I sit down and reserve my time for rebuttal is explain to you why, even if you did feel like you needed to get to that question, which I don't think you need to, but if you did need to get to that question, why you should say that the good-faith doctrine doesn't apply. I don't want to take up your rebuttal time, but your argument this morning has confused me on something I thought I understood. I thought that your argued the reason why you've argued this case the way you have, trying to convince us to draw a very sharp distinction between right and remedy is because you believe that North Carolina has the right under State law to devise its own version of the exclusionary rule. If you're not — if that's not your argument, then I'm really puzzled by what you're doing. Functionally, that's the way things work in North Carolina, Justice Alito. I think the only thing that — that maybe I need to make more clear is that the reason why it works that way in North Carolina is because the State has held that violations of our State constitution cannot be subject to a good-faith exception. The State has also held — Alito, the State constitution is irrelevant, because you're arguing about whether there is — whether there can be mistake of law in determining whether a search is reasonable under the Fourth Amendment to the Constitution of the United States. Whatever we hold on that, North Carolina can do whatever it wants on the same question with respect to the State constitution. That's the next thing I was going to say. So in theory, you're right, Justice Alito. But what North Carolina has said is that we construe Article I, Section 20, which is the State counterpart, to be coterminous with the Fourth Amendment. So that's not the way the Court goes about its business. So functionally in the State of North Carolina, where you are is that Fourth Amendment questions run exactly parallel to State substantive constitutional law questions, and if there's a violation, you suppress. Kagan. Mr. Fischer, suppose this were a Federal case and we had available to us, it had all been briefed, two alternative holdings in order to support the conviction, and one holding was this is not a violation of Fourth Amendment law in the first instance, and the other holding was this is a violation of Fourth Amendment law, but the exclusionary rule operates, and so the good-faith exception to the exclusionary rule operates, and so the evidence comes in. Is there any difference between those two holdings? Fisher. I think the difference between those two holdings, if the Court remanded, may well play out differently in North Carolina. Kagan. No, no, no. But I mean, if it were a Federal case. Fisher.  I'm sorry. I missed that. Kagan. Is there a difference? Fisher. If it were a Federal case, it would be functionally the same holding as to the outcome of that case. But I think, if I could. Kagan. Yes, please. Fisher. But there would be important reasons nonetheless, even though that would be a functionally identical holding for the parties in the case. There would be very important reasons nonetheless to make sure that you rendered that holding as to remedy jurisprudence, not as to the Fourth Amendment itself. And one reason is what I opened with and I've tried to say a couple of times, that the government should be presumed to know the laws. It would undercut public confidence in law enforcement and the common law rule upon which the criminal law is built to say the government doesn't have to be presumed to know the law when it acted. Kagan. Well, you say that, but some people say that the existence of a rule remedy gap undermines public confidence in the law. So why should we take that argument any more seriously than the rule remedy gap problem in law? Because that argument comes from academic literature, and my argument comes from the Court's jurisprudence, where people have argued that you shouldn't suspend remedy, and the Court has rejected and said, no, as Judge Wilkinson wrote in the law review piece that I cited in the brief, there's an important reason to announce the right even if you're not going to give a remedy. Now, there are practical reasons for this as well. Even in the Court's good faith jurisprudence, the Court has given leeway to officers only to the extent the officers are relying on a clear directive from a third party, like a legislature or a court. This is very different. This is like the Johnson case from 1982, where the Court held that if the officer acts on his own view of a, quote, unsettled rule of law, that we not only find a Fourth Amendment violation, we suppress. So even if I have to argue this case. Alito, do you dispute that this was a reasonable interpretation of State law? I would dispute if you were asking it in a sort of Chevron sense, that the statute was sufficiently ambiguous that it could have been read this way. But I don't think it should be viewed as a reasonable mistake under the good faith doctrine, because the good faith doctrine deals with directives from third parties and officers relying on third parties. Johnson, that I was just citing to you, says that unsettled question of law. Alito, I don't mean to ask this in the context of any other body of the Court's case law, just in a common sense understanding of the term. Was it reasonable if a, even an attorney sat down and read the relevant North Carolina statutes, do you think it would be reasonable for that attorney to conclude that you have to have two functioning brake lights and not just one? I think in the common sense way, I could concede that that would be reasonable. But there's a legal way of asking what is reasonable and what is not. Justice Alito, let me say two things about that. One is to just remind you that the Court has never taken into account ambiguity or the possibility for error in asking whether a governmental officer gets the law right. And secondly, you have to define the concept of reasonable. So even if you look at the facts of this case and you think, well, this mistake was reasonable, the other side hasn't given a definition of what it would say would be a reasonable mistake of law. There's a reference to qualified immunity jurisprudence in the State's brief and that Solicitor General describes, uses language to say a foothold in the statutory text. I'm not sure what definition actually would apply here. But one thing I do know from the Court's good qualified immunity and AEDPA jurisprudence, you'd have to define that concept. And the definitions that exist in the law right now are very, very broad. And I think that goes to the practical reason that I was going to describe to the Court why you shouldn't hold that the Fourth Amendment was satisfied here, because if you say that anything that's reasonable, as the Court has defined it in other cases, susceptible to debate, you vastly expand police officer discretion to conduct traffic stops. As the Court has noted already, officers have enormous discretion both by the nature of the traffic laws and under the Wren decision. Scalia. Mr. Fisher, let me try my problem just one last time before your time. You assert that we should not decide the remedy question because it hasn't been argued. But wasn't it your responsibility to argue it? You're asking us to set aside a judgment of the North Carolina court. That judgment can be set aside only if, number one, the Fourth Amendment was not violated or, number two, it was violated, but the remedy does not have to be exclusion of the evidence. It's — it seems to me it's your burden to establish not just that the Fourth Amendment was violated, but also that exclusion was necessary under the Constitution. And it is no answer to say, well, that hasn't been argued. You haven't argued it. That's the problem. Fisher. Well, if I need to argue it, I would refer you to the part three arguments in our opening brief, which explain why, even if you move the good faith into the right — and those would be my arguments, Justice Scalia. The only other case that comes to mind is the Court's Iolta case several years ago, where there was a takings question brought to the Court, and the Court divided that Federal law question into two pieces. And when the lower court had only addressed the first piece of the case, the Court reversed on that first piece of the case and sent it back down. So I think what I'm asking for isn't terribly different. Sent it back down for that Court to decide the other piece. But this Court will not decide the other piece, as you acknowledge. If a State makes that choice, that it's going to give a more favorable remedy, then Federalism should respect that choice, Justice Scalia. And so I'd like to reserve the rest of my time. Thank you, Mr. Fisher. Mr. Montgomery. Mr. Chief Justice, and may it please the Court. The Fourth Amendment prohibits unreasonable searches and seizures, but it does not require that police officers be perfect. Because the touchstone of the Fourth Amendment is reasonableness, all that is required is that a police officer have a reasonable view of the facts and apply those facts to a reasonable understanding of the law. When will we ever get an understanding, the right understanding of the law? Meaning, as I read the North Carolina Supreme Court decision, it still hasn't told me whether it's one or two brake lights. And the next police officer who wants to stop someone won't know that either. Now, he may be bound by the appellate court decision, but that won't help clarify the state of the law. Isn't what you're doing going to leave criminal law unclear? It's one thing to say that you want to not subject officers to civil liability. It's another to say you want to leave the law unclear in a criminal prosecution. Well, Your Honor, in North Carolina, controlling precedent does come from the Intermediate Court of Appeals. That's not to say that our Supreme Court might not reach a different decision someday. But for now, police officers would be bound by what the North Carolina Court of Appeals decided. So the law has been decided, an officer who goes out and makes a stop tomorrow because one brake light is out would be acting unreasonably under that decision. So it doesn't leave criminal law uncertain. Well, it will for the appellate division if it's now taking your view, that it can just find out whether the reading, the officer's reading of the law is reasonable. It basically means that any open question, police officers will rule in favor of their right to search. It depends on whether the question is an open question and whether that interpretation by the officer is reasonable. It certainly may be an unreasonable interpretation. It would have to be. Define what would make it unreasonable. Well, it would be unreasonable if there was plain language of the statute that no one could reach a different interpretation about at all if it was plain, or if there was a definite decision by an appellate court, it would be unreasonable for the officer to interpret it in his own way. And the whole standard would be a reasonable person standard. Would a reasonable person be able to take this view of the statute? That's a very broad definition of reasonable. I understand the idea that when, you know, 99 people out of 100 think you have to have two brake lights like you do everywhere else in the country, that it's reasonable for the police officer to think that. But it sounds to me like you're adopting the same standard that we apply in qualified immunity, which gives the officers quite broad scope, and that's troubling. It's not the same as qualified immunity, in that qualified immunity looks also – it looks – it protects the plainly incompetent. We're not saying that is the standard here. No, I think it doesn't protect the – I'm sorry. It doesn't protect the plainly incompetent. Yes. I think what the Chief Justice is asking you is to describe a case for us where the officer would receive qualified immunity, but it would not count as reasonable for these purposes. One of the things that this Court has said in Wilson v. Lane is that this Court and courts can look beyond just the officer's interpretation like this. It could look to other matters. There could be an officer who had an unreasonable interpretation of the statute, and yet he may still have qualified immunity, for instance, because he was told by a by someone that this was correct, and that was a complete misunderstanding of the statute. It may be that that officer would still be protected by qualified immunity, but for the Fourth – for Fourth Amendment purposes, that would not be a reasonable interpretation of the statute. You would not give a pass. I mean, let's say the case is flipped here, and the most reasonable reading of the statute is that you only need one brake light. And so someone's driving around with one brake light. You pull them over, and he's going to say, I reasonably thought that, you know, I only needed one, and the court comes out and says I needed two. In that case, his ignorance of the law would not save him, would it? No, it would not. But the flip side of that is that an officer's belief that you needed all of your brake lights and that is not actually the law does not mean that that person is guilty. In other words, in this instance, this – this driver – excuse me, the defendant here, or the driver, actually, could not be held liable for the brake light violation. So it's not that the fact that an officer thinks reasonably that the law is something, that doesn't make it the law. Just like if a citizen does not think that's the law, that does not mean that he can escape liability. What if you – Sotomayor, I'm sorry. The police officer wasn't stopping him because of the brake light. The police officer was involved in criminal interdictions and admitted that this was a pretext, a lawful pretext, he thought. So he wasn't there just to tell him. If he had just stopped him and said, you know, fix your brake light, and drove away, there would never be a lawsuit, correct? That's correct. Sotomayor, so how many citizens have been stopped for one brake light who are asked to have their car searched? And is that something that we as a society should be encouraging? Well, there – wholly innocent people are stopped quite often because of mistakes of fact, for instance. That's part of the whole Terry – how Terry works and those types of brief stops. There turns out times that citizens have not committed any kind of offense and yet they are stopped. This is just another example of that in which an officer acted reasonably, just as with a reasonable mistake of fact, and it turned out that this was not actually a violation. I'd like to focus again on your definition of reasonableness. Let's say you have two court of appeals decisions. One says you need two brake lights. The other says you need one. Is it reasonable for the officer to pull somebody over when one of their two brake lights is burned out? If you have conflicting rulings from the court of appeals, it would be reasonable then for the officer to decide which he thought was the better rule. If there were two different decisions from the court of appeals, which is not supposed to happen in our system, but if that did happen, then it would be reasonable for the officer to rely on either one of those. Ms. Kagan. Mr. Montgomery, I take it that one of Mr. Fisher's arguments, maybe his primary argument, is that this just looks like a remedies question. It does not look like a rights question. It focuses on the culpability of the officer in the way we do when we think about immunity or when we think about the exclusionary rule. So why isn't that exactly right, that to the extent that this conviction ought to be upheld, it ought to be upheld on remedies reasons rather than rights reasons, to fit in with our basic understanding of what remedies and rights do and do differently in our law? Well, certainly this Court looks at different things when it looks at the right versus the remedy. Reasonableness is important in the right stage. In the remedy stage, that may be considered, but also the culpability of the officer, whether he was deliberately disregarding the law, those types of things. This Court has addressed mistakes of law both in the rights and the remedy stage. And so it would be important to address it in the right stage here in this particular case, because then we don't get into the sorts of things that would be necessary in the remedy stage, if that answers your question. What about the dissenter in the North Carolina Court of Appeals who said North Carolina has no good faith exception? And so all that this decision does is it allows the police to get around the absence of a good faith exception. Wasn't that position of the dissenter, that allowing for a reasonable mistake of law to support a warrantless stop is the functional equivalent of a good faith exception? That was the position of the dissenting justices at the North Carolina Supreme Court, one of the things that they said. But again, this again gets back to reasonableness as the standard for the Fourth Amendment. And that is what this Court has said is important at that stage, is whether an officer is acting reasonably. There are other considerations that take place at the remedy stage. So the State was asking for nothing more than simply whether this violated the Fourth Amendment, and that was the remedy.  And the remedy is the remedy. And counsel, you — maybe you have the answer to all the questions I was asking of Mr. Fisher. And I guess the answer is you haven't argued that point, right? You did not assert in your brief or — and you haven't asserted it in oral argument thus far, anyway, that even if it did constitute a violation of the Fourth Amendment, the remedy did not have to be exclusion of the evidence, and that remedy is indeed subject to reasonable mistake of law, and therefore, the decision has to be affirmed.  You want to put all your eggs in the basket of whether it's a violation of the Fourth Amendment, am I right about that? That's correct, Your Honor. Okay. I'm sorry to waste so much of our time. Well, we did not make that argument below at the North Carolina Supreme Court. And Mr. Fisher is correct in that it is our State constitution that says that there is no good-faith exception. If a defendant had only raised a Fourth Amendment question in our courts, the good-faith exception would still be available if that defendant did not make a claim under the State constitution. Well, I'm not too sure it makes good prudential sense to allow the North Carolina Supreme Court to put to us what is basically an abstract question. The question of — To give an answer without reference to the fact that, as Justice Scalia indicates, part of the Fourth Amendment is the good-faith exception. It bears unreasonableness. That's correct. And this Court has, in cases like Rodriguez, dealt with the mistake of law just in the rights stage rather than the remedies stage. And that's all that has been briefed in this instance. That's correct. And one of the things that is different about this from Kroll and Davis is that we're not talking about — Excuse me. I mean, that just doesn't wash. Yes, in other cases, we just decide the right and don't have to decide the remedy. But this is a case in which unless, unless the remedy is exclusion, there is no basis for us to set aside the judgment of the North Carolina Supreme Court, unless the remedy is exclusion. It seems to me that's part of the case to reverse. If we can't say that, we have no business reversing. But if it hasn't been argued, I guess we can do that, I guess. That has not been argued here or below. That's correct. A difference between this case and Kroll and Davis is that this case does not — this involves a mistake of law as to a substantive statute rather than a mistake of law as to the Fourth Amendment itself. And the difference in that is that a reasonable violation of the Fourth Amendment is still a violation of the Fourth Amendment. There — if there's a statute that gives an officer the opportunity to make a seizure on less than what is required by the Constitution, less than probable cause or less than reasonable suspicion, even if the officer is reasonable, that is still a Fourth Amendment violation, which is why this Court would have to go to the remedy portion to decide whether the exclusionary rule applied. In this instance, this case, it was a mistake as to a substantive statute that was used by the officer to — as part of the facts and circumstances of this case. As part of the totality of the circumstances of this case, the officer considered what he thought was the correct law. Ginsburg. Why does it — why should you draw the line between if he gets the Fourth Amendment wrong, the Fourth Amendment is violated, but if he gets the statute wrong, then the Fourth Amendment is not violated? Because the officer only needs to act reasonably, and the fact that he gets the statute wrong does not mean that he acted necessarily unreasonably. Well, the fact that he made a mistake about what the Fourth Amendment requires could also be reasonable. It could be, and that would be proper to consider, as this Court has, in the remedy stage rather than in the right stage. In the DiFilippo case that this Court decided, there was a situation in which a statute — a substantive statute was found unconstitutional and void for vagueness, and yet this Court found that there was probable cause in that case for the officer to make an arrest based upon that statute. So that was one case in which this Court looked at it at the right stage as a mistake of law rather than at the remedy stage. Would you think if DiFilippo came up again today with all the cases that have been decided since then that we would decide it the same way, or do you think we would do it the same way? I think the Court would decide it the same way. And this Court in Arizona v. Evans said that it — the cases even decided before the good-faith exception are still viable in terms of the Fourth Amendment analysis. What kind of mistake of law did the police officer make in DiFilippo? The law said exactly what he thought it said. That's correct, Your Honor. Why do you classify this as a mistake of law question? I believe the — We said it was presumptively valid and he acted according to a statute. That's right. We don't ask police officers to ignore the law. That is correct that it's different from this case, but there was still — No, no, no. This is a mistake of law. It wasn't following the law, presumably, according to the appellate division. That's right. The DiFilippo case is important because you had someone who was acting wholly innocently. He was not committing an offense at all, as in this case you had someone who was acting wholly innocently and was not committing a violation of the law. So in DiFilippo, this Court said that even though the conduct was wholly innocent, there still was probable cause, despite the mistake of law. And that's all that we're saying in this case. Isn't there another difference between DiFilippo and this case? The Court in DiFilippo talks a lot about how there's a presumption of constitutionality for any statute, and we don't want officers to go around questioning the constitutionality of statutes. But here, that's not the case. Here, there's a statute and an officer is not supposed to read it as broadly as possible. An officer is supposed to read it fairly. So there's no presumption that goes into effect and there's no — there's no way in which we could say the same thing about DiFilippo, is that we don't want officers to inquire into this area. It is different, but we do want officers to enforce the law. We don't want them to just sit back and not enforce it. We want them to enforce the law fairly and as written, and not to push every statute to its, you know, the furthest, furthest, furthest it could go without being found, you know, utterly unreasonable. That's correct, Your Honor, but we do want them to act reasonably and still enforce the law, not to turn a blind eye to what may be a violation. How does the statute read here? How does it — what are the exact words of the statute? The statute has two parts. It has a subsection D. Where do we find it? This would be in the appendix to the Respondent's brief, appendix pages 1 — appendix pages 1 through — actually through 5 has all of the relevant portions of the statute. Subsection D involves rear lamps and says that every motor vehicle shall have all originally equipped rear lamps or the equivalent in good working order. That's the relevant portion of subsection D. Subsection G, which is on page 3 of the appendix, says no person shall sell or operate on the highways of the state any motor vehicle manufactured after December 31, 1955, unless it shall be equipped with a stop lamp on the rear of the vehicle. That is the language that the North Carolina Court of Appeals said when it said a stop lamp. That meant that only one was required. That seems to be what it says. The confusion comes in — the confusion comes in, Justice Scalia, in the last sentence of subsection G on appendix page 3, which says the stop lamp may be incorporated into a unit with one or more other rear lamps. Where the confusion comes in is that sentence would seem to imply that the stop lamp is a rear lamp, that it can be incorporated into a unit with one or more other rear lamps. And if you go back to subsection D, that's the section that says that all originally equipped rear lamps must be in good working order. So there are some conflicts in the — That's correct. All the other lamps, we know — So it has to be plural. If it's going to apply to the stop lamp and all the other lamps, of course you would say lamps. My time is up. Thank you. Thank you, counsel. Ms. Kovner. Mr. Chief Justice, and may it please the Court. Since the founding, the probable cause standard has allowed police officers to make stops when there are reasonable grounds to believe that a person committed a crime, even if the officer later turns out to have been mistaken about either the facts or the law. And as Justice Kennedy observed at the start of this argument, given that this Court's case has recognized that there can be a reasonable mistake of law, an officer who makes a reasonable mistake of law may have a reasonable grounds to believe that a person committed a crime. If I can go to a question that Justice Kagan asked about why this question is more appropriately addressed at the right stage than the remedy stage, we think there are three main reasons. The first has to do with history. Since the founding, this Court has treated the probable cause standard as allowing for reasonable mistakes of law. Sotomayor, are all the cases that you cite, including Riddle, all in the context of a custom statute that didn't permit customs officers to suffer damages for purposes of an error of law, correct? Yes, Your Honor, that's correct. None of those cases involved a violation of the Fourth Amendment. That's correct. The reason those cases are relevant here is because those cases are interpretations of the probable cause standard. But how is that different in terms of its analysis, those cases, from what we've ultimately applied as a qualified immunity standard with respect to civil damages today? Doesn't it follow — don't they follow exactly the same reasoning? I don't think so, Your Honor. Those cases, the probable cause reasoning that the Court has followed in those cases is what the Court has done at the merit stage of the Fourth Amendment analysis. So this Court has routinely cited cases under those custom statutes as illuminating the meaning of the probable cause standard, and it's therefore illuminating the meaning of the probable cause standard. So you disagree with Justice Storey when he looked at those cases and made the point I just made? No. You think he was wrong? There's no doubt that in those cases the question the Court was ultimately answering is are those customs officers liable. But the way that it was answering that question was by determining whether those officers had probable cause, and probable cause is the constitutional standard. And that's why this Court has subsequently relied on those cases in illuminating the constitutional standard. Breyer. Can I ask you a question that I'd just like you to address for a minute? Assume for the sake of argument that I agree with you that a reasonable mistake of law, then I — is an excuse. But what is a reasonable mistake? Now, that's what I'd like you to address, and in particular, would you have objection to? It has to be, one, exceedingly rare, two, objective, three, it is — has to be that the reasonable lawyer would think that the policeman was right on the law, and only if, after, quote, your brief, a careful scrutiny and serious difficulty in construing the law, does it turn out that he's wrong. Now, what do you think about that or some other standard? I think we agree with each of those descriptions of a reasonable mistake. All right. If you agree with those, then what about this case? Because, after all, it does say a stamp – a stoplight. What's the difficulty of construing that to mean a stoplight? So we think that the North Carolina Supreme Court and the court of appeals were right that an officer could reasonably interpret the statute to require a reasonable mistake. Only after a careful scrutiny and serious difficulty in construing the law does it turn out that the officer was wrong. What's the difficulty? It says a stamp – a stoplight? Here the difficulty is in the other provision, which requires all originally equipped rear lamps to be working. And … But that includes the stoplight and any other lights, okay? The stoplight, the turn lights, the backup lights. So you had to use the plural for those other provisions. Agreed. It's not the plural. It's the fact that all originally equipped rear lamps need to be working, which means that if a car was originally equipped with multiple stop lamps, as cars now are, then when one of them is broken, one of the originally equipped rear lamps is not working. So that's the difficulty, and that's why none of the courts that considered this question thought this was anything other than a very hard question of statutory interpretation. Roberts So where do you come out in my hypothetical of the two court of appeals decisions? Is that reasonable for the officer to say, well, I'm going to pick this one and follow that? So if the officer is in a jurisdiction whose court of appeals has decided the question, we think the officer is bound by that interpretation, even if other courts of appeals come out differently. But if the officer is in a jurisdiction where the question is undecided and different courts have come out differently in other jurisdictions, then we don't think the question of whether one court has decided it in one way is dispositive. We think then the court looks to this question of, is it a really difficult question? Breyer I forgot one thing, which may be obvious to me. We're not talking about a difficulty in construing the Fourth Amendment itself. We're talking only about a difficulty in construing a criminal statute where, in fact, the reason for the stop or seizure is based on a violation of criminal law. That's right. We think the probable cause standard allows for an officer to act when he has reasonable grounds to be defiant. Sotomayor How is your standard different from the qualified immunity standard of reasonableness? Breyer Sure. We think that an officer, in order to have reasonable grounds for a stop, needs to be able to point to something in the statute that affirmatively supports his view. Whereas the qualified immunity standard seems to require essentially the opposite. It seems to require that there's a precedent that forecloses what the officer does in order to protect only those who are acting, to protect everybody except for those who are clearly incompetent. Ginsburg There's one argument that is in your brief that I didn't follow. You said the importance of holding the way you recommend is so that you can get this question solved. You said tee up the question, what is the rule, one light or two lights? But yet in this case, there was consent. The evidence that came in had nothing at all to do with the traffic violation. So we wouldn't need to, the Court wouldn't need to decide that traffic violations say. There was consent. I think the North Carolina Intermediate Appellate Court said it was a legitimate consent. There was consent and this evidence comes in and we never have to deal with what the traffic regulation was. Breyer That's correct, Your Honor. And this question comes up in two contexts. Sometimes it will be litigated in the suppression context and sometimes it will be litigated because the officer actually issues a citation. And our concern expressed in that portion of the brief is that if the court takes the position that whenever an officer is wrong about the law, he's violated the Fourth Amendment, it's going to deter officers from making stops where there are arguments on both sides. Kennedy Do you agree that if there is an illegal stop, that this consent is the fruit of a poison tree? Ginsburg We think that would be a difficult question. We don't necessarily agree with that. This Court has said it's not simply a but-for test. So even if the stop was a but-for cause, that doesn't necessarily mean that the evidence was fruit of the poisonous tree, but the question wasn't argued below by the State and it hasn't been briefed here. So we've addressed simply the question that the parties first. Kagan Ms. Kovner, you started your argument by saying you were going to give us three reasons why this should be a rights question rather than a remedies question. You said history, which, frankly, you know, I think your history probably doesn't say as much as you think it says. So I want to know what number two and number three are. Kovner Sure. The second is an administrability reason. We think that this is the simplest standard. You simply ask officers to decide whether a – you simply ask courts to decide whether an officer could reasonably think that a person had committed a crime. And you don't need to separate was this a question of law or a question of fact and treat one in the rights section and one in the remedies section. And the third is that we don't think there's a normative reason to treat mistakes of law and mistakes of fact differently. When an officer makes a stop in this situation, he can just as reasonably be confused as to what the law is under these statutes, as confused as to what the facts are, and if we're going to treat mistakes of fact as part of the rights analysis, it makes sense to treat reasonable mistakes of law in the same way. If the Court has no further questions, thank you. Roberts Thank you, counsel. Mr. Fisher, you have three minutes left. Fisher Thank you. I'd like to make four points if I could. To start with the administrability question of what would reasonableness mean, Mr. Chief Justice, I think your hypothetical of two differing court of appeals opinions in a State I think under the analysis that I just described would mean that it would violate the Fourth Amendment in half the State to conduct the stop and not in the other half the State, because each would be binding in its own component of the State. And that shows why in Wren and many other cases this Court has rejected that kind of analysis at the right stage and cabined it only to the remedy stage. If you want to ask the question of reasonableness, in this case, didn't the dissenters in the North Carolina Supreme Court say that the interpretation adopted by the court of appeals was surprising? So all we would have to say on reasonableness is that if it's not – if it's surprising, if the correct interpretation is surprising, then the contrary interpretation is reasonable. Would we have to go further than that? Fisherman I think you do, because you have to just give a little more teeth to it. What the Solicitor General said is that it would have to have foothold in the statute, and I think that's more or less what was recited today. There's a recent D.C. court of appeals opinion that holds that a police officer could argue from a foothold in the statute that all license plate frames are illegal. Now, they rejected that under their code, but it's just one of innumerable arguments that a law enforcement officer might make and that this reasonableness test would give grave— Breyer No, no. I mean, it would be one way, one way, one court, one way, one way, the other way. The officer loses because, you know, it ties. It has to be unusual. It has to be – you heard what— Fisherman Well, I think, Justice Breyer, the problem with that is that it's the core presumption that the officer needs to understand the law as it existed, as it was later construed. Mr. Chief Justice, you asked, I think, about the ignorance canon, and the State's response was, well, if somebody is reasonably mistaken about the law, we would convict him. And the reason why is because we would assume he knew the law. We would assume that somebody, if the court of appeals split and this court divided 5-4, the person is still convicted because we assumed they knew the law when they acted. And all we're asking for today is for the exact same assumption to apply to police officers. And the reason why is because the common law rule, in the case of the former officer general, the founding cases they described don't help them. They're only remedy cases, and they reinforce our point. And even when the Court has cited those cases, they're all in the pre-Leon context, where this Court didn't distinguish rights from remedies. If you want to look at the founding, the controlling rule would be the common law rule. And as we've said in our brief, with no disagreement from the other side, the common law rule, dating back centuries, was that ignorance of the law on the police officer's part, even if it was perfectly reasonable, didn't justify the stop. And if I could say one last thing to Justice Scalia about the colloquies we were having before. With all due respect, I really do think there's nothing unusual about a party litigating a case up through the courts. It may arise in Federal court or it may arise in State court, but they can choose the arguments they choose to raise. And when we got a judgment in our favor from the North Carolina Court of Appeals, it was up to the State at that point to choose what arguments it wanted to pursue further in this case. So just like a State may — a party may ride the First Amendment instead of the Second or a rights question instead of remedy, we think that's all that's happened here. Thank you, counsel. The case is submitted.